Mr. Justice Shepard
delivered the opinion of the Court:
1. The first contention, on behalf of the appellants is, that the copyright act is cumulative merely in respect of right and remedy; and that independent of its provisions, they have a right of property by the common law in their musical productions which, through the new arrangement *564 of combinations of sounds producing harmony, and of written words to be sung in connection therewith, express and convey the thoughts of the authors and composers.
In this we can not concur. Whatever rights the appellants may have as authors and composers of the subject-matter of their claims must depend wholly, for recognition and remedy, upon the provisions of the copyright act. Inquiry into, and determination of what their rights and remedies might have been by the rules of the common law, is precluded by two express decisions of the Supreme Court of the United States. Wheaton v. Peters, 8 Pet. 591; Holmes v. Hurst, 174 U. S. 82, 85. In the last of these cases it was said — referring to the English decisions that have been relied upon by the appellants: — “ While the propriety of these decisions has been the subject of a good deal of controversy among legal writers, it seems now to be considered the settled law of this country and England that the right of an author to a monopoly of his publications is measured and determined by the copyright act — in other words, that while a right did exist by common law, it has been superseded by statute.”
2. The allegations of the bill distinctly show that the appellants have complied with all of the requirements of the copyright act and have, consequently, “the sole liberty of printing, reprinting, publishing, copying, executing, finishing and vending the same,” vested thereby. R. S., Sec. 4952.
The contention hereunder is, that the reproduction of the music and words of appellants’ publications, in the manner and for the purposes described in the bill, is the act of publishing or copying the same within the meaning of the aforesaid act. This contention we are also constrained to deny.
We can not regard the reproduction, through the agency of the phonograph, of the sounds of musical instruments *565 playing the music composed and published by the appellants, as the copy or publication of the same within the meaning of the act. The ordinary signification of the words “copying,” “publishing,” etc., can not be stretched to include it.
It is not pretended that the marks upon the wax cylinders can be made out by the eye, or that they can be utilized in any other way than as parts of the mechanism of the phonograph.
Conveying no meaning, then, to the eye of even an expert musician and wholly incapable of use save in and as part of a machine specially adapted to make them give up the records which they contain, these prepared wax cylinders can neither substitute the copyrighted sheets of music nor serve any purpose which is within their scope. In these respects there would seem to be no substantial difference between them and the metal cylinder of the old and familiar music box; and this, though in use at and before the passage of the copyright act, has never been regarded as infringing upon the copyrights, of authors and publishers.
This peculiar use in either music box or phonograph, instead of copying the music in the sense of the copyright act, to the injury of the publisher, would rather seem analogous to that of one, who having purchased the sheet music of the publisher, proceeds to perform it continually in public for his own profit.
The precise question here presented for decision is a novel one because of the comparatively recent invention of the phonograph and the later extension of its uses as described in the bill, and there is no precedent directly in point to guide us.
There are, however, two cases bearing close analogy the decisions in which sustain our conclusion. Kenney v. McTammany, 33 Fed. Rep. 584; Boosey v. Whight, L. R. 1899, *566 1 Ch. Div. 836. In the first of those, the United States Circuit Court held that the rolls of perforated paper used in organettes were not copies of the sheet music from which they were adapted, within the meaning of the copyright law.
In the second case the English Chancery Court, under an act defining* copyright as “the sole and exclusive liberty of printing and otherwise multiplying copies,” etc., held, that perforated papers, used in an Aeolian, which represented the instrumental music of certain songs were parts of the instrument and not sheets of music within the act.
The decree dismissing the bill was right and will there- • fore be affirmed with costs. Affirmed.